DECISION AND JUDGMENT
{¶ 1} This is an accelerated appeal from a judgment of the Lucas County Court of Common Pleas, in which the trial court granted summary judgment to appellee, Robert L. Kalb, M.D., and dismissed a complaint filed by appellant, Louis J. Kubitz, in a medical malpractice action. On appeal, appellant sets forth the following as his sole assignment of error: *Page 2 
 {¶ 2} "I. The trial court erred in granting Defendant-Appellee Robert L. Kalb, M.D.'s motion for summary judgment, holding the cognizable event occurred June 23, 2005. The Trial Court's determination resulted in Plaintiff-Appellant Louis Kubitz's complaint being time-barred and dismissed."
 {¶ 3} The following facts are relevant to the issues raised on appeal. On May 26, 2004, appellant fell off a horse and sustained injuries to his right shoulder and his right ankle. On May 28, 2004, appellant sought treatment for his injuries from appellee, to whom he was referred by his family physician. Appellee x-rayed appellant's ankle and determined that appellant had a bimalleolar fracture, involving both the distal fibula and tibia. In addition, appellant had a superficial lesion over the fracture site, which had become ulcerated. Appellee placed appellant in a removable cast boot, and referred him to physical therapy. An MRI was later performed on appellant's shoulder, which revealed a rotator cuff tear.
 {¶ 4} On July 22, 2004, appellee performed surgery to repair the shoulder injury. Within a week after surgery, appellant's shoulder showed signs of a post-operative infection. Cultures taken at the surgical site revealed the presence of a dangerous organism known as methicillin-resistant Staphylococcus aureus ("MRSA").
 {¶ 5} Between August 2004, and March 2005, appellee, a reservist, was called to active military duty. During his absence, another physician treated appellant's infection. However, in spite of treatment, the MRSA infection progressed, necessitating several surgeries to remove infected tissue, insertion of a continuous line for antibiotic therapy, *Page 3 
and use of a vacuum pump to aid in further debridement of a chronic ulcer that developed at the surgical site. Ultimately, appellant had to undergo extensive surgery at the Cleveland Clinic to remove infected bone and muscle from his shoulder.
 {¶ 6} While his shoulder was being treated, appellant's physical activities, including walking, were limited. When he began walking again, appellant complained to appellee, who returned from military service, that his ankle was still painful. Appellee x-rayed the ankle several times between April and June 23, 2005. On June 23, 2005, he told appellant that, although not completely healed, the ankle was "progressing." Appellant did not return to appellee for treatment after that visit. In July 2005, appellant filed a malpractice suit against appellee, in which the primary allegation was negligent treatment of appellant's right shoulder. That lawsuit was voluntarily dismissed in September 2005.
 {¶ 7} In February 2006, appellant sought treatment from a podiatrist, Michael Cragel, DPM, for an unrelated injury to his left foot. A medical history form provided by Cragel's office asked whether appellant had ever received "previous professional foot care" from another physician. Appellant stated on the form that his right ankle was treated by "Kalb" in May 04. He described the type of treatment as "Broken-Shitty Tre. [sic]" In March 2006, appellant sought further treatment from Cragel, this time for pain in his left ankle. On April 6, 2006, appellant told the podiatrist that his right ankle was still hurting. X-rays taken by Cragel on that day revealed that the bimalleolar fracture of *Page 4 
appellant's right ankle had never healed. Cragel advised appellant to discuss the matter with an attorney.
 {¶ 8} Although he met with an attorney in April 2006, appellant did not elect to pursue legal remedies at that time. Instead, appellant sought treatment for his ankle from a chiropractor, who unsuccessfully attempted to reduce appellant's pain by "manipulating" the ankle joint. On December 7, 2006, appellant filed the complaint herein, in which he alleged that, as a result of appellee's negligent treatment, he suffered a widening of the lateral talofibular articulation of his right ankle, and misplaced non-union (unhealed) fractures of both the medial malleolus (i.e., the tibia) and the distal fibula. Attached to the complaint was the affidavit of Jack G. Casini, M.D., who stated that, in his expert opinion, appellee "departed from accepted standards of care * * * in his care and treatment of Louis J. Kubitz," and that such departure "directly and proximately caused [appellant] to suffer severe and partially debilitating injury." Appellee filed a timely answer on January 22, 2007.
 {¶ 9} On March 1, 2007, surgery was performed on appellant's ankle by Thomas Pandanilam, M.D., who fixated the broken bones with plates and screws. After the surgery, appellant's ankle joint was stabilized, but he continued to experience pain, and had limited motion in his ankle. He also developed arthritis in the ankle joint.
 {¶ 10} On November 2, 2007, appellee filed a motion for summary judgment and memorandum in support. In his motion, appellee argued that the trial court should deny appellant's claim because he should not be allowed to bring his shoulder claim in one *Page 5 
lawsuit and his ankle claim in another. Alternatively, appellee argued that appellant's ankle claim is barred by the one-year statute of limitation in RC. 2305.113, because the "cognizable event" which alerted appellant to his need to pursue legal remedies, i.e., the realization that he was still in pain, occurred more than one year before the suit was filed. Attached to appellee's motion was the affidavit of attorney John Barron, who stated that appellant's shoulder claim against appellee was dismissed without prejudice on September 19, 2005. In addition, appellee relied on the deposition testimony of appellant, Casini, and appellee's own deposition.
 {¶ 11} On November 16, 2007, appellant filed a memorandum in opposition, in which he stated that he did not improperly split his claims into two lawsuits, since the claims arose at different times and involved separate body parts. Appellant also argued that his ankle claim is not time-barred by R.C. 2305.113(a), since he was not aware of the need to file a claim until December 7, 2006, less than one year before the claim was actually filed. Appellant further argues that, pursuant to R.C. 2305.113(C)(1), he had an outside limit of four years to file a medical malpractice claim. In support, appellant relied on his own and Kalb's depositions, as well as his medical records .
 {¶ 12} On November 28, 2007, appellee filed a reply, in which he re-asserted that appellant should have brought all of his claims in one lawsuit or, at minimum, should have brought his ankle claim by July 2006. In support, appellee argues that, by June 2005, appellant recognized that appellee's treatment of his ankle was substandard. Accordingly, the lawsuit is time-barred because it was not filed by July 2006. *Page 6 
 {¶ 13} On February 13, 2008, the trial court filed an opinion and judgment entry, in which it found that the parties' patient-physician relationship was terminated in June 2005. The trial court further found that appellant knew his ankle was problematic before Dr. Cragel told him the ankle had been treated improperly, since appellee told appellant his ankle was not completely healed on June 23, 2005, after 11 months of treatment. The trial court further found that, in the complaint filed on July 19, 2005, in addition to the claim for his shoulder, appellant stated a general claim for negligence on the part of appellee. Lastly, the trial court cited Casini's deposition testimony, in which Casini stated that any patient who is still having significant pain one year after surgery should seek out medical advice to determine the cause of the pain. Accordingly, the trial court concluded that "the cognizable event in this matter" occurred at the same time as appellant's last office visit with appellee on June 23, 2005. After finding that no other genuine issue of fact existed, the trial court granted appellee's motion for summary judgment and dismissed appellant's complaint. A timely notice of appeal was filed on February 28, 2008.
 {¶ 14} In his assignment of error, appellant asserts that the trial court erred by granting summary judgment to appellee. In support, appellant first argues that the one-year statute of limitation did not begin to run until April 6, 2006, when Cragel told him that appellee did not properly treat his ankle. Appellant states that, until that time, he reasonably relied on appellee's representation that his ankle, while not completely healed, was "doing really good." Appellant also states that he reasonably believed that some pain *Page 7 
in his ankle was normal, given his age and activity level. Appellant next asserts that the timing of the lawsuit concerning his shoulder should not prohibit him from filing a claim for his ankle since, at the time the first lawsuit was filed, there had not yet been a cognizable event that should have led him to believe his ankle was improperly treated. In any event, appellant asserts that the two claims deal with two different body parts, and allegations made in the first lawsuit were not broad enough to encompass any claim other than improper treatment of appellant's shoulder.
 {¶ 15} We note at the outset that an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129; Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C). Summary judgment is a procedural device to terminate litigation; therefore, it must be awarded cautiously. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 {¶ 16} The main issue in this case is whether appellant's cause of action against appellee is time-barred by R.C. 2305.113, which states that:
 {¶ 17} "(A) Except as otherwise provided in this section, an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued." R.C. 2305.113(A). *Page 8 
 {¶ 18} The term "accrued" is not defined by statute. Accordingly, it has been left up to the judiciary to "determine when a cause of action accrues for purposes of the statute of limitations." Patterson v.Janis, 10th Dist. No. 07AP-347, 2007-Ohio-6860, ¶ 10. (Other citations omitted.)
 {¶ 19} The Ohio Supreme Court has held that:
 {¶ 20} "Under [former] R.C. 2305.11(A)[1], a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later." Frysinger v. Leech
(1987), 32 Ohio St.3d 38, paragraph one of the syllabus. Subsequently, the Ohio Supreme Court clarified that the "accrual date" for a medical malpractice claim is based on the occurrence of a "cognizable event," which it defined as a "noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." Allenius v. Thomas (1989),42 Ohio St.3d 131, 134. Accordingly if, because of harm suffered, a patient believes his or her treating medical professional has done something wrong, "such a fact is sufficient to alert a plaintiff"" to the necessity for investigation and pursuit of [his or her] remedies. * * *""" Id., citing Graham v. Hanson (1982), 128 Cal.App.3d 965, 973. In addition, for a cognizable event *Page 9 
to have occurred, it is not necessary for the patient to "be awareof the full extent of the injury * * *." Id., at 133-134. (Emphasis original.)
 {¶ 21} In Flowers v. Walker (1992), 63 Ohio St.3d 546, the Ohio Supreme Court further stated that "constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." Id. at 549, citing McGee v. Weinberg (1979), 9 CalApp.3d 798, 803-804. (Other citation omitted.) In addition, "[a] plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations." Id, citing Allenius, supra. "Rather, the `cognizable event' itself puts the plaintiff on notice to investigate the facts and circumstances relevant to [his or] her claim in order to pursue [his or] her remedies." Id. "Accordingly, once the cognizable event occurs, a plaintiff must (1) determine whether the injury suffered is the proximate result of malpractice, and (2) ascertain the identity of the tortfeasor or tortfeasor."Patterson, supra, ¶ 13, citing Flowers, supra, at syllabus.
 {¶ 22} As set forth above, in February 2006, appellant stated that he received "shitty" treatment from appellee for his broken right ankle in May 2004. In his deposition, appellant testified as follows:
 {¶ 23} "Question: This is my question: As of leaving Dr. Kalb's practice in June of 2005 when you last saw him — you know what time period I'm referring, June of 2005?
 {¶ 24} "Appellant: Right. *Page 10 
 {¶ 25} "Question: As of leaving his practice in June of 2005, you felt he had given you shitty treatment, true?
 {¶ 26} "Appellant: True."
 {¶ 27} In addition, the following are relevant excerpts taken from appellant's deposition testimony:
 {¶ 28} "Question: Okay. I take it you were still having some pain in your right ankle [as of January 6, 2006]?
 {¶ 29} "Appellant: Yes.
 {¶ 30} "Question: Okay. The pain that you had in your right ankle had never gone away completely, true?
 {¶ 31} "Appellant: True.
 {¶ 32} "* * *
 {¶ 33} "Question: Okay. The pain that you were having in your ankle as of January of 2006, was it the same or worse or better than the pain you were having in your ankle, let's say, January of 2005; in other words, I'm comparing January of 2005 to January of 2006, was your situation about the same?
 {¶ 34} "Appellant: It was basically almost the same. * * *.
 {¶ 35} "Question: Okay. When you were [walking around and going places] in, let's say, early fall of 2005, you were still having pain in your right ankle, true, when you were walking?
 {¶ 36} "Appellant: True. *Page 11 
 {¶ 37} "Question: Okay. And the more you walked on it, the worse it got?
 {¶ 38} "Appellant: True. * * * But I thought that was natural, you know, arthritis, or that's just the way it's supposed to be.
 {¶ 39} "* * *
 {¶ 40} "Question: So if I understand it, when you had that discussion with Dr. Kalb in April of 2005, he did tell you that it had not completely healed, true?
 {¶ 41} "Appellant: True.
 {¶ 42} "* * *
 {¶ 43} "[Question]: Did you think it was unusual that almost a year had passed, 11 months, and that your ankle had not completely healed?
 {¶ 44} "Appellant: Yes."
 {¶ 45} In addition to appellant's testimony, the record contains the deposition of Casini, who testified as follows:
 {¶ 46} "Question: Do you agree that if a patient has suffered an ankle fracture of the * * * variety that Mr. Kubitz suffered, and if that patient is still having any significant pain a year after the injury, he should seek out medical advice as to why his ankle is still hurting?
 {¶ 47} "Casini: Yes."
 {¶ 48} A review of the record demonstrates that appellant thought it was unusual that his ankle had not completely healed by June 2005, after almost a year of treatment. Appellant also testified that the pain in his ankle did not improve significantly between *Page 12 
January 2005 and February 2006. Finally, appellant stated that, as of June 2005, he believed the treatment he received from appellee was "shitty." Casini, appellant's own expert witness, testified that a patient who is still experiencing pain a year after an ankle injury should seek out an answer as to why he or she is still in pain.
 {¶ 49} This court has considered the entire record that was before the trial court and, on consideration thereof, finds that appellant may not have had actual knowledge of the legal significance of his potential claim until April 6, 2006. However, the record shows that, by June 2005, appellant had constructive knowledge sufficient to put him on notice of the need to investigate the facts and circumstances relevant to his claim and to determine whether the failure of his ankle to heal was due to malpractice. Accordingly, the "cognizable event" which started the running of the one-year statute of limitations occurred when the physician-patient relationship between appellant and appellee terminated on June 23, 2005. Since appellant's complaint which alleged an ankle injury was not filed until December 7, 2006, the claims made therein are time-barred. In addition, because appellant's complaint alleging an ankle injury was untimely filed, the issue of whether appellant should have been able to "split" his shoulder and ankle claims into two different malpractice actions has become moot.[2] Appellant's sole assignment of error is not well-taken. *Page 13 
 {¶ 50} On consideration whereof, this court finds further that there remains no other genuine issue of material fact. Accordingly, after considering the evidence presented in a light most favorable to appellant, appellee is entitled to summary judgment as a matter of law.
 {¶ 51} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] R.C. 2305.11(A) is virtually identical to its successor, R.C. 2305.113, in every respect that is relevant to this appeal.
[2] As noted above, appellant's original complaint, which set forth a claim for his shoulder injury, was voluntarily dismissed on September 19, 2005. That complaint could have been refiled up to one-year later and could, conceivably, have been amended to include appellant's ankle claim. However, as noted by the trial court, appellant's failure to timely refile his original complaint for the shoulder injury has resulted in that complaint being time-barred as well. *Page 1